349 So.2d 858 (1977)
Clydia DAVENPORT, Plaintiff-Appellant,
v.
Paul J. HARDY, Secretary of State, Clyde F. Bel, Sr., Constable of the First City Court for the City of New Orleans and, Henry Michel Grundmeyer, Constable of the Second City Court of the City of New Orleans, Defendants-Appellees.
No. 60458.
Supreme Court of Louisiana.
August 24, 1977.
Written Reasons Rendered August 31, 1977.
Rehearing Denied September 2, 1977.
*859 Glenn L. Morgan, New Orleans, for plaintiff-appellee.
William J. Guste, Jr., Atty. Gen., Joseph W. Thomas, Asst. Atty. Gen., Ronald C. Davis, Staff Atty., New Orleans, for Paul J. Hardy.
Roger B. Jacobs, New Orleans, for Clyde F. Bel, Sr.
James A. McPherson, New Orleans, for Phyllis Landrieu, additional party plaintiff.
HOOD, Justice ad hoc.
Plaintiff, Clydia Davenport, a candidate for election to the Office of Constable of the First City Court of the City of New Orleans, seeks a declaratory judgment decreeing Act 619 of 1977 unconstitutional. She also seeks a writ of mandamus ordering the Secretary of State to refuse to obey the provisions of that act. The defendants are the Secretary of State, the Constable of the First City Court of the City of New Orleans, and the Constable of the Second City Court of that city. The trial court issued an alternate writ of mandamus pursuant to plaintiff's demands.
Interventions were filed by two other parties who allegedly are also candidates for the Office of Constable of the First City Court of the City of New Orleans. Both intervenors join plaintiff in this suit.
The trial judge rendered judgment decreeing the statute unconstitutional, directing that the writ of mandamus previously issued be made peremptory, and ordering the Secretary of State to proceed with the election for the Offices of Constable for the First and Second City Courts as presently scheduled. Two of the defendants, the Constable of the First City Court and the Secretary of State, appealed to this Court under authority of LSA-Const. Art. 5, Sec. 5(D) (1974).
The appeal was argued on August 24, 1977, and, because of the nature and exigency of the case, we rendered judgment later that day, reversing the judgment appealed from, vacating the mandamus issued by the trial court and dismissing the suit. We now assign reasons for that judgment.
Several issues are presented, the principal ones being whether Act 619 of 1977 is invalid on the grounds (1) that it fails to set forth completely the provisions of the law enacted or amended, and (2) that it adopts a system or code of laws by general reference to it, all inconsistent with the requirements or prohibitions contained in Article 3, Section 15(B), of the Louisiana Constitution of 1974.
The offices of Constable of the First City Court and Constable of the Second City Court of the City of New Orleans were established by Sections 89 and 92 of Article 7 of the Louisiana Constitution of 1921. In each instance, the term of office of the constable was fixed in those constitutional provisions at four years.
The Louisiana Constitution of 1974 does not specify the terms of office of the constable of either of those courts. Instead, Section 32 of Article 5 of that Constitution provides that "the following courts and officers in Orleans Parish are continued, subject to change by law: . . . the constables and the clerks of the first and second city courts . . ." [Emphasis supplied.]
The 1974 Constitution also provides that Article 7, Sections 89 and 92 of the 1921 Constitution are continued in existence as statutes. LSA-Const. 1974, Art. 14, Sec. 16(A). The provisions of those sections of the 1921 Constitution were incorporated in the Louisiana Revised Statutes as LSA-R.S. 13:2153.1. Since the 1974 Constitution became effective, therefore, the terms of offices of the Constables of the First and Second City Courts have been controlled by statutes, rather than by provisions of the Constitution.
*860 Act 619, adopted at the 1977 regular session of the Louisiana Legislature, purports to amend and reenact LSA-R.S. 13:2153.1 by increasing the terms of offices of the constables of the two city courts, changing the time of the election of their successors, and extending the present terms of the incumbent constables for a period of about eight or nine months. The pertinent parts of Act 619 of 1977 provide:
"2153.1. First and second city court; clerks and constables
"A. There shall be one clerk and one constable of the First City Court of the city of New Orleans, each of whom shall be elected by the qualified voters residing within the territorial jurisdiction of the court. The clerk shall be elected for a term of four years. The term of the constable in office on the effective date of this Section shall expire on December 31, 1978; provided, however, that his successor shall be elected at the same time as district attorneys throughout the state in 1978, and thereafter the successors to the office of constable shall be elected at the same time as the district attorneys throughout the state.
"B. There shall be one clerk and one constable of the Second City Court of the city of New Orleans each of whom shall be elected by the qualified voters residing within the territorial jurisdiction of the court. The clerk shall be elected for a term of four years. The term of the constable in office on the effective date of this Section shall expire on December 31, 1978; provided, however, that his successor shall be elected at the same time as district attorneys throughout the state in 1978, and thereafter the successors to the office of constable shall be elected at the same time as the district attorneys throughout the state.
"Section 2. If any provision or item of the Act of the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
"Section 3. All laws or parts of laws in conflict herewith are hereby repealed."
The 1974 Constitution and the laws of the State of Louisiana provide that a district attorney shall be elected for a term of six years. LSA-Const.1974, Art. 5, Sec. 26(A); LSA-R.S. 16:1.
The obvious purpose of Act 619 of 1977 is to conform the terms of office and the time of the election of the Constables of the First and Second City Courts to the terms of office and the time of election of practically all other constables in Louisiana. See LSA-R.S. 13:1879. It increases the term of office of each such constable to six years, and it provides for the election of his successor at the congressional elections.
Plaintiff and intervenors contend that Act 619 of 1977 is unconstitutional and void, primarily because it fails to set forth completely the provisions of the law enacted or amended, and, because it adopts a system or code of laws by general reference, all in violation of LSA-Const.1974, Art. 3, Sec. 15(B). They take the position that since the above act is invalid, the terms of the incumbent Constables of the First and Second City Courts expire in April, 1978, and that the election of their successors must be held on October 1, 1977, as heretofore required, instead of with the congressional elections in 1978.
LSA-Const.1974, Art. 3, Sec. 15(B), provides:
"A bill enacting, amending, or reviving a law shall set forth completely the provisions of the law enacted, amended, or revived. No system or code of laws shall be adopted by general reference to it."
The trial judge held that Act 619 of 1977 was void because it failed to set forth "completely" its provisions, as required by the above quoted provision of the Constitution. He points out that the act purports to fix the terms of office for the Constables of the First and Second City Courts by declaring that they shall be elected at the same time as district attorneys. He then reasons that "assuming that the act fixes a term of *861 office, one must refer to another law to discern what this term is," and that the act thus fails to "completely" set forth its provisions. We do not agree with the conclusions reached by the trial court.
All Louisiana Constitutions since 1845 have contained provisions similar to those included in LSA-Const.1974, Art. 3, Sec. 15(B). See, LSA-Const. Art. 119 and 120 (1845); LSA-Const. Arts. 116 and 117 (1852); Arts. 119 and 120 (1864); LSA-Const. Arts. 115 and 116 (1868); LSA-Const. Arts. 30 and 31 (1879); LSA-Const. Arts. 32 and 33 (1898); LSA-Const. Arts. 31 through 33 (1913); LSA-Const. Art. 3, Sec. 18 (1921).
The Constitution of 1845, being the first to contain such a provision provided in Articles 119 and 120 that:
"No law shall be revised or amended by reference to its title; but in such case, the act revised, or section amended, shall be reenacted and published at length." [Art. 119.]
"The legislature shall never adopt any system or code of laws by general reference to such system or code of laws, but in all cases shall specify the several provisions of the laws it may enact." [Art. 120.]
Article 3, Section 18, of the Constitution of 1921 provided:
"The Legislature shall never adopt any system or code of laws by general reference to such system or code of laws; but in all cases shall recite at length the several provisions of the laws it may enact."
Since 1845, the Constitutional provisions requiring that an act shall set out its provisions at length and prohibiting the adoption of systems or codes of laws by general reference have gone through some stylistic changes, but the meaning has remained the same. The essential difference between the provisions of LSA-Const.1974, Art. 3, Sec. 15(B) and similar provisions in previous constitutions is that the word "completely" was used in 1974, whereas the words "at length" were used prior thereto. We believe that the provisions of the 1974 Constitution in that respect are substantially the same as the corresponding provisions of the other Constitutions.
We have examined the Records of the Louisiana Constitutional Convention of 1973, and the published Constitutional Convention of 1973, Verbatim Transcripts, and find nothing in either indicating that the Convention intended to change the law as it existed prior to the slight stylistic change made in 1974. We believe that there would have been some comment about or reference to the change in the language used in Article 3, Section 15(B) if the members of the convention had intended a change in the previously existing law.
This Court has held consistently that the constitutional prohibition against adopting a system or code of laws by general reference is directed against the adoption of foreign systems or codes of laws, and not those arising domestically, i. e., from our Legislature. Consistent with that finding, we also have determined that laws previously enacted by our Legislature, and in force at the time of the enactment of a new law, may be incorporated into the new law by a mere general reference to the existing laws in the new statute. State v. Reado, La., 295 So.2d 440 (1974); State v. Pete, 206 La. 1078, 20 So.2d 368 (1944); Campagna v. City of Baton Rouge, 165 La. 974, 116 So. 403 (1928); State v. De Hart, 109 La. 570, 33 So. 605 (1903); Kathman v. City of New Orleans, 11 La.Ann. 145 (1856); Arnoult v. City of New Orleans, 11 La.Ann. 54 (1856). See also, State ex rel. Bragg v. Rogers, 107 Ala. 444, 19 So. 909 (1895).
In State v. De Hart, supra, we said:
"We are inclined to think that the words `any system or code of laws,' as used in the article, means systems or codes of laws other than our ownsystems of law, codes of law in vogue in other countries and jurisdictions; that these are not to be adopted by merely a general reference to the same, but that such systems or codes, or the several provisions of the same, wanted to be adopted or enacted here, are to be recited at length in the adopting act."

*862 "The General Assembly in enacting the statute of 1884 did not `adopt' a `system or code of laws by general reference to such system or code of laws,' within the meaning of the constitutional provision. The statute makes, merely, a particular reference to two articles of the Civil Code, a system of laws long since adopted in Louisiana, and this in aid only of its purpose to define accurately the crime of incest which the act denounces and punishes."
The statute attacked on constitutional grounds in Campagna v. City of Baton Rouge, supra, authorized governing authorities to advertise for bids and to let contracts "in the manner now provided by law." In upholding the validity of that act, we held that it "in no way adopts a system or code of law, but . . . refers to and adopts the procedure contained in statutes on the same subject matter and originating from the same source, i. e., the Legislature of the state."
We think the rules applied in the cited cases are applicable here.
Act 619 of 1977 contains a general reference to the laws of the State of Louisiana, presently in force and effect, which relate to the terms of office and the time of the election of district attorneys. We find that the reference to those existing laws is not prohibited by LSA-Const.1974, Art. 3, Sec. 15(B), and that that section of the Constitution does not preclude the incorporation into the new statute of the existing Louisiana laws relating to the terms and time of election of district attorneys. We also find that, with the permissible general reference to other existing laws of this state, the statute sets forth completely the provisions of the law enacted or amended.
Our conclusion is that the provisions of Act 619 of 1977 do not conflict with the requirements or prohibitions contained in LSA-Const.1974, Art. 3, Sec. 15(B), and that the statute thus is constitutionally valid.
Plaintiff and intervenors contend further that the Legislature does not have the right or authority to extend the terms of the incumbent constables. They argue that the provisions of Act 619 of 1977, and particularly those which purport to extend the terms of the incumbent officials, deprive them of rights guaranteed to them by Article 4, Section 4, of the Federal Constitution, and by the Fourteenth Amendment to that Constitution. We find that the Louisiana Legislature has the right and authority to extend the terms of the two defendant constables, as provided in the above act, and that in doing so it does not deprive plaintiff or intervenors of any rights which were guaranteed to them by the Federal Constitution.
The Louisiana Legislature possesses the authority to enact any law which is not prohibited by our Constitution. Hainkel v. Henry, La., 313 So.2d 577 (1975); In re Gulf Oxygen Welder's Supply Profit Sharing Plan and Trust Agreement, La., 297 So.2d 663 (1974); Joint Legislative Committee of Legislature v. Strain, 263 La. 488, 268 So.2d 629 (1972); Kane v. Louisiana Commission on Governmental Ethics, 250 La. 855, 199 So.2d 900 (1967); Plebst v. Barnwell Drilling Co., Inc., 243 La. 874, 148 So.2d 584 (1963); State v. Pete, supra. See, The Work of the Louisiana Appellate Courts for the 1974-1975 TermLouisiana Constitutional Law, 36 La.L.Rev. 533; 1 Official Journal of the Proceedings of the Constitutional Convention of 1973, 769 (1973).
The 1974 Constitution fixes the terms of office for many officials, including Supreme Court Justices, Court of Appeal judges, district court judges, members of the Judiciary Commission, district attorneys, clerks of district courts, and coroners. La.Const. Art. 5, Secs. 3, 8(C), 15(C), 25, 26(A), 28(A), 29. It, however, does not set a term of office for constables of the New Orleans City Courts. Instead, it specifically vests the Legislature with the authority to govern those offices. Article 5, Section 32 provides:
"Except for provisions relating to terms of office as provided elsewhere in this Article, and notwithstanding any other contrary provision of this constitution, the following courts and officers in Orleans Parish are continued, subject to *863 change by law: the civil and criminal district courts; the city, municipal, traffic, and juvenile courts; the clerks of the civil and criminal district courts; the civil and criminal sheriffs; the constables and the clerks of the first and second city courts; the register of conveyances; and the recorder of mortgages." [Emphasis supplied.]
In this instance, therefore, the Constitution generally establishes the Legislature's power to govern the office of constable. It imposes no limitations or restrictions on the exercise of that power, and it does not fix the terms of office of the constables. Under those circumstances, we believe that the Legislature has the authority to extend the terms of office of the encumbent constables, as it did in Act 619 of 1977.
State v. Guillory, 184 La. 329, 166 So. 94 (1935), supports the legal principles upon which we base our decision. Therein we stated:
"But section 40 of article 7 of the Constitution contains no restriction upon legislation curtailing the term of office or affecting the salary of a district attorney, during his incumbency. His term of office or salary may, therefore, be curtailed or affected by a simple act of the Legislature during his incumbency, without the necessity of impeachment, or address out of office, or suit to remove, as such legislation is authorized by the present Constitution."
In Gouaux v. Smith, 160 La. 617, 107 So. 466 (1926), we said:
"As this mandate, in article 296 of the Constitution of 1898, and of 1913, and in section 11 of article 6 of the Constitution of 1921, directing the Legislature to create parish and municipal boards of health, did not fix the term of office, the Legislature had authority to fix it. And the Legislature had authorityand has the authority yet, if it was not surrendered by the restriction in the call for the constitutional convention of 1921to abolish, during the term of an incumbent, any office that the Legislature had authority to create and to fix the term of."
We conclude that the enactment of Act 619 of the 1977 regular session was within the authority of the Legislature.
Plaintiff argues that Act 619 of 1977 is invalid because it contravenes Article 3, Section 12(A)(1), of the Louisiana Constitution of 1974, which provides:
"Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
"(1) For the holding and conducting of elections, or fixing or changing the place of voting."
One of the intervenors argues that the act is invalid because it is a local or special law, and that notice of the intent to introduce a bill to enact such a law was not properly published, as required by LSA-Const.1974, Art. 3, Section 13.
We have concluded that the statute being attacked here is not a "local" or "special" law, and that the provisions of Sections 12 and 13 of Article 3 of the Constitution of 1974 are not applicable.
A law is not local or special, even though its enforcement may be restricted to a particular locality, simply because the conditions under which it operates do not prevail in every locality. State ex rel. Miller v. Henderson, La., 329 So.2d 707 (1976); Teachers' Retirement System of Louisiana v. Vial, La., 317 So.2d 179 (1975); Knapp v. Jefferson-Plaquemines Drainage District, 224 La. 105, 68 So.2d 774 (1953); Kotch v. Board of River Port Pilots Commissioners, 209 La. 737, 25 So.2d 527 (1946), affirmed 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); Clark v. City of Opelousas, 147 La. 1, 84 So. 433 (1920) and the cases cited therein; State v. Dalon, 35 La.Ann. 1141 (1883); Comment, General and Special Laws in Louisiana, 16 La.L.Rev. 768 (1956).
We held in State v. Clement, 188 La. 923, 178 So. 493 (1938), that a "general" law is one which operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides, or one which operates equally upon all of a designated class, founded upon a *864 reasonable and proper classification. A "local" or "special" law is one which because of its restrictions can operate upon or affect only a portion of the citizens, or a fraction of the property embraced within the classification created.
In State v. Dalon, supra, an act to put the Criminal District Court for the Parish of Orleans in motion was attacked on the ground that it was local or special law which had not been properly published. We held that the act was not local or special legislation. In doing so, we said:
"The argument, that a law which relates solely to the machinery of a court of justice having jurisdiction over the territory of one parish only, is a local or special law, because it does not operate throughout the State and all the parishes thereof, is perfectly preposterous, and so hollow that it cannot stand criticism.
"The real distinction between public or general laws and local or special laws is, that the former affect the community as the whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local private interests."
Dalon, supra, has most recently been cited with approval in Teachers' Retirement System of Louisiana v. Vial, La., 317 So.2d 179 (1975), where we held:
"General laws are those that operate equally and uniformly upon all persons brought within the relations and circumstances for which they provide or that operate equally upon all persons of a designated class founded upon a reasonable and proper classification. In contrast, a statute is special if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the class. In essence, a special law is one directed to secure some private advantage or advancement for the benefit of private persons." [Footnoted citations omitted.]
In Kotch v. Board of River Port Pilots Commissioners, supra, the plaintiff attacked a statute which created the Board of River Port Pilot Commissioners solely for the Port of New Orleans. Relying on Dalon, supra, we held that the statute involved there was not a local or special law.
The act which was attacked in State ex rel. Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778 (1947), increased the salaries of the deputies of the Criminal Sheriff of the Parish of Orleans. We held that the mere fact that the deputies were paid by the City of New Orleans did not render that statute a local or special law; that the Criminal Sheriff and his deputies are indispensable adjuncts to law enforcement; and that the fixing of their salaries is necessarily inter-related with the proper and competent administration of justice. We concluded that the act fixing their salaries was not a local or special law.
In the instant suit, although the constables of the First and Second City Courts are elected by voters from a limited area, they serve the community as a whole and not a certain number of persons within a class. The act does not give private advantage for the benefit of persons within a certain locality, but on the contrary it affects generally all persons who may have contact with the First and Second City Court.
Our conclusion is that Act 619 of 1977 is not a local or special statute, and that LSA-Const.1974, Article 3, Sections 12 and 13 are not applicable to it.
We find no merit to the argument that the act must be applied prospectively only, and that it should not be permitted to avoid the election scheduled to be held on October 1, 1977, solely because the Democratic Executive Committee has met and the election campaign has already commenced.
For these reasons we rendered judgment on August 24, 1977, reversing the judgment appealed from, declaring Act 619 of 1977 to be constitutional and valid, vacating the writ of mandamus issued by the trial court and dismissing this suit.
DIXON, J., absent.