*1425 The opinion of the court was delivered by
Watkins, J.
Having been convicted of murder and sentenced to the extreme penalty of the law, the defendant has appealed, relying upon a variety of technical pleas, though chiefly upon the complaint that he is a colored man and that the deceased was a white man, and in the selection and drawing of the grand jury there was an unlawful discrimination against the black or colored race in favor of the white or Caucasian race, whereby he sustained an unjust deprivation of his legal rights.
First in order is defendant’s bill of exceptions to the overruling of his challenge to the array. Substantially, it is that in selecting the persons whose names were placed in the jury wheel, from which the grand jurors who found the bill and the petit jurors who tried and convicted him were drawn,, the jury commissioners violated the provisions of various State and Federal statutes, as well as various provisions of the State and Federal constitutions, in that they discriminated against citizens of the black or colored race, so that he was deprived of an equal protection of the law during the progress of the trial.
That, consequently, the indictment against him was null and void.
Simplified, the complaint is that citizens of African descent were excluded from the jury wheel, and consequently from participating in the trial from the commencement to the end.
This, of course, depended upon the proof, of which the defendant carried the burden.
The evidence fails to support the challenge.
Each of the jury commissioners was called as a witness for the purpose of substantiating the charge, but their evidence completely overthrows it. The trend of their cestimony is that they had acted with perfect fairness and impartiality in the discharge of all their duties as jury commissioners and in strict conformity to law.
That there were quite a number of names of colored men in the jury wheel at the time the venire was drawn, and that there were at least two colored men on the panel from which the grand jury who found the indictment against the defendant were chosen.
That they have never, in the performance of their duties, made any discriminations on account of race, color or previous condition' of servitude.
Defendant’s counsel also called and interrogated as witnesses *1426 quite a number of deputy sheriffs, who served summonses on the persons whom the jury commissioners desired to examine preparatory to jury service.
The purport of their evidence is that a large preponderance of them were constructively notified by making domiciliary service, and being unacquainted with them personally they could not state whether they were colored or white persons.
The evidence shows that there were some persons of color who were members of the grand jury who found the bill, and it is, therefore, quite clear that the general venire was not exclusively composed of white persons, and it is thus made clear that colored citizens were not excluded from the venire on account of race or color.
The trial judge cited and relied upon State vs. Joseph, 45 An. 905. It is quite a similar case, and the same issue was therein raised and decided.
Admitting the premises arguendo, the court say:
“ It is quite true that all the names which were drawn from the box were those of white people, yet it is not established by any testimony in the record that all the three hundred names in the general venire box were those of white people. This is destructive of defendant’s theory, because he had the chance of some colored persons being drawn from the box, unless it was exclusively made up of the names of white persons. And, in addition to this argument, is the fact, sworn to by one of the jury commissioners, that people of African descent were not excluded from the venire box on account of their race or color.”
There is no question in our minds of the correctness of the trial judge’s ruling.
With regard to the defendant’s complaint as to the action of the court with reference to his motions for subpoenas duces tecum on the register of voters and the jury commissioners, nothing need be said, because they cnt no figure in the case, since the testimony which was elicited from the witnesses clearly show that his challenge to the array was groundless. As these subpoenas could not have practically affected the l’esult, in the face of the positive testimony adduced on the trial of the motion, it might be conceded for the argument, that the proceedings under them were irregular, though such is not the case by any means, as the subpoena directed to the jury commissioners shows that it was intended only as a means of *1427 eliciting information, and not for the purpose of obtaining books and papers, which were particularly described therein.
Defendant’s counsel retained a bill to the judge’s refusal to quash the indictment on the ground that Act No. 170 of 1894, under the provisions of which the grand jury was drawn, is unconstitutional, null and void — it being a local or special law, and not enacted according to constitutional requirement by giving previous public notice.
The act drawn in question purports to be ian amendment and reenactment of Sec. 2 of Act 98 of 1880 to organize the Oriminal District Oourt of the parish of Orleans, in pursuance of Art. 180 of the Oonstitution of the State; to create a Board of Jury Commissioners, and for other purposes.
Immediately after the title of this amendatory act comes this prefatory clause, viz.:
“ Whereas due proof has been made that notice of intention to apply for the passage of this act has been published in accordance with the provisions of Art. 48 of the State Oonstitution,” etc.
The provisions of Art. 48 of the Oonstitution are as follows, viz.:
“ No local or special laws shall be passed on any subject not enumerated in Art. 46 of the Oonstitution, unless notice'of the intention to apply therefor shall have been published, without cost to the State, in the locality where the matter or thing to be affected may be situated; which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the General Assembly of such bill, and in the same manner provided by law for the advertisement of judicial sales.
“The evidence of such notice having been published shall be exhibited in the General Assembly before such act shall be passed, and every such act shall contain a recital that such notice has been given.”
This amendatory statute appears to strictly conform to the foregoing constitutional requirement in every particular, and its recitals must be accepted as the final and conclusive proof of such notice of intention having been given, and that such proof was “ exhibited in the General Assembly” before the passage thereof, there being no charge of fraud or ill-practice in procuring its enactment.
No extrinsic proof is admissible for the purpose of contradicting the recitals contained in a legislative act. State ex rel. Morris vs. Mason, 43 An. 590.
*1428 But we think it evident that the amendment must follow the conditions of the statute that is thereby amended; and it was held and interpreted by this court not to be a local or special law. State vs. Dalon, 35 An. 1141.
In treating the question here raised, the court there said:
“It has no private or local good in view, but aims solely at the enforcement of the laws enacted for the prevention and punishment of crime. It is a public, a general aet’which regulates the common good of each and every member of the human family within the limits of the State.
“ The words ‘ local ’ or ‘ special ’ are clearly used in contradistinction of the word ‘ general.’
* * * * * * *
“ A moment’s reflection satisfies the mind that the intention to apply, alluded to, can only mean that of private individuals seeking some private advantage or advancement for the benefit of private persons or property within a certain locality.
“It is manifest that the act assailed was one of indispensable necessity to put in motion a court created by the Oonstitution, and which, without such legislation, would have remained lifeless and cumbersome.”
We can but regard that reasoning sound and the authority of that decision complete.
On neither proposition can defendant’s complaint be sustained. The judge below correctly declined to sustain the alleged unconstitutionality of the law and properly maintained the indictment.
Immediately after the defendant’s motion to quash was overruled his counsel filed a motion to transfer'the cause to the Circuit Court of the United States, which is exclusively based upon the grounds assigned in the challenge to the array of grand jurors and other rulings of the court previously discussed.
This motion was at once overruled and the transfer of the cause refused.
This refusal was a matter of course, in view of the previous rulings of the court below, which we have found correct and approved.
Had we, on the other hand, ascertained the fact to be that the jury commissioners were guilty of illegal discrimination against citizens of African descent, within the sense of the Federal statutea snd *1429 Constitution, our ruling would have been different and the motion to transfer unnecessary.
After the trial was completed a motion for a new trial is made, substantially, upon the same grounds as those already gone over, coupled with a criticism of the written charge of the court to the jury.
Of course, the correctness of the rulings of the trial judge on the propositions enumerated necessarily draws to it the correctness of the judge’s declination to grant a new trial predicated on the theory that his rulings were erroneous, and we have uniformly held that unless exception has been first taken to the charge of the court objections urged for the first time in a motion for a new trial will be of no avail.
At this juncture in the proceedings counsel for the defendant tendered a motion in arrest of judgment, based on the ground that he having filed a motion to transfer this cause into the Circuit Court of the UnitedStates, under and by virtue of Sec. 641 of the Revised Statutes of the United States, and having subsequently filed and docketed said petition in said Circuit Court conformably to law, this court is not possessed of jurisdiction or authority any further to proceed in the cause. ■ And thereupon defendant’s prayer is that the judgment of the court a qua be arrested, that the trial and verdict be declared a nullity, and that he be surrendered to the Circuit Court in order that the cause be therein proceeded with according to law.
The question here presented, so far as the jurisdiction and authority of the court a qua is concerned, goes back to the challenge to the array again. If the challenge was causeless, all subsequent proceedings were, necessarily, legal and jurisdictional — ultimately subject to such decision as the Federal tribunals may make in the premises.
We must deal with the issues presented, and, in our view, there is nothing in them to justify the conclusion that the court a qua did not have full and complete jurisdiction. The motion in arrest was correctly refused.
Having examined this case with the care required in a case involving the life of a human being, we have reached the conclusion that there is no error in any of the rulings defendant has complained of. But we can not refrain from applauding the zeal and vigor with which counsel for the defendant has defended the accused.
Judgment affirmed.