370 So.2d 508 (1979)
STATE of Louisiana
v.
Leonard R. SLAY, Wesley L. Slay and Clois Slay.
No. 63286.
Supreme Court of Louisiana.
April 9, 1979.
Rehearing Denied May 21, 1979.
*509 Edward Larvaidain, Jr., Alexandria, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion Farmer, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., Research & Appeals Div.; Kurt F. Sins, Asst. Dist. Atty., for plaintiff-respondent.
Peter E. Duffy, Metairie, for Louisiana Dept. of Wildlife & Fisheries, amicus curiae.
DIXON, Justice.
On June 23, 1978 Wesley L. Slay and his brother and son, Clois Slay and Leonard Slay, were arrested while fishing in Red River Parish by agents of the Department of Wildlife and Fisheries and were charged with using nets of an illegal size and with using untagged nets, separate violations of R.S. 56:322. The defense moved to quash the bills of information filed against the defendants on the ground that the statute in question violated the constitutional prohibition against local or special laws embodied in Article 3, § 12 of the 1974 Louisiana *510 Constitution.[1] The trial court denied the motion, and the defendants were convicted as charged. Wesley Slay was fined $25.00 and was ordered to pay court costs; Clois and Leonard Slay were required to pay court costs, but their fines were suspended. On November 3, 1978 this court granted a writ of certiorari to review the ruling of the district court. 363 So.2d 1388 (La.1978). We reverse.
Article 3, § 12 of the Louisiana Constitution prohibits the legislature from enacting a special or local law which defines any crime.[2] A statute is considered special or local if its restrictions can affect only a portion of the citizens or a fraction of the property embraced within the created classification. Davenport v. Hardy, 349 So.2d 858 (La.1977); State ex rel Miller v. Henderson, 329 So.2d 707 (La.1976). A general law, on the other hand, "operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or operates equally upon all of a designated class, founded upon a reasonable and proper classification." State v. LaBauve, 359 So.2d 181, 182 (La.1978).
However, the mere fact that a statute's enforcement is limited to a particular locality does not by itself render the statute a local or special law, simply because the conditions under which it operates may not prevail in all localities. State v. LaBauve, supra; Davenport v. Hardy, supra. The salient characteristic of a special or local law is that it operates in one locality without the possibility of extended coverage to other areas if the requisite criteria of the statutory classification are determined to exist there, or that it affects only a certain number of persons within a class, and not all persons possessing the class characteristics. State ex rel. Miller v. Henderson, supra.
R.S. 56:322 provides in pertinent part:
"A. . . .
(1) A person may have in possession or in use for the taking of commercial fish, hoop nets with a mesh of not less than two inches square or four inches stretched after treating with tar or copper.
. . . . .
D. Notwithstanding the provisions of Subsection A of this Section concerning the size of mesh, any person may have in his possession or use for taking fresh water commercial fish, seines and hoop nets with a mesh of not less than one inch square or two inches stretched after treating with tar or copper, in the following designated areas:
(1) In the parishes of Assumption, Livingston, Iberville, Pointe Coupee, St. Martin, Avoyelles, LaSalle, St. Mary and West Baton Rouge, including all streams or rivers which serve as a boundary of any of said parishes, and within the banks of the Black River forming the border between the parishes of Concordia and Catahoula, and within the banks of the Vermilion River where it forms a common boundary between the parishes of Lafayette and St. Martin, and within the banks of the Vermilion River within the parish of Lafayette.
(2) In that portion of the Atchafalaya River Basin area that is bounded on the north by U. S. Highway 190, on the east by the Mississippi River to the Gulf of Mexico, on the south by the Gulf of Mexico, and on the west by the West Atchafalaya Basin protection levee, and
(3) In the parish of Caldwell within the natural banks of the Ouachita River only."
In brief, the statute prohibits the use of nets with mesh less than two inches square or four inches stretched except in the areas *511 designated in Subsection D, where mesh of one inch square or two inches stretched is permitted.
A statute is suspect as a local or special law if its operation is limited to certain parishes or designated areas unless the limitation results from a reasonable classification such as population or physical characteristics. State v. LaBauve, supra; see Johnson, Legislative Process, 36 La.L.Rev. 549 (1976). Although the statute itself provides no reasonable basis for the classifications, the state and the Department of Wildlife and Fisheries in an amicus curiae brief contend that the smaller mesh is permitted to promote efficient management of fishery resources in southern areas of the state where the great confluence of waters gives rise to a large fish population.
However, reference to a standard map of the state reveals the fallacy of this position since large expanses of waters in the southern part of the state are not included in the areas designated in Subsection D.[3] It is difficult to believe that the fish population is significantly greater in St. Mary Parish, where the one inch mesh is permitted, than in Vermilion Parish or the western part of Iberia Parish, where using the smaller mesh entails criminal liability. It also appears anomalous that fishermen may use the one inch mesh in the Ouachita River within the boundaries of Caldwell Parish, but must fish with the larger mesh once the river flows into Catahoula Parish. Certainly it strains logic to assume that the fish population is significantly smaller in the downriver parish, especially in light of the expert testimony adduced at trial that most fish in the state spawn in the southern waters and migrate to the north. It is also difficult to reconcile the purported rationale of the classification with the total disregard given to other water bodies in the southern part of the state such as the Calcasieu, Pearl and Sabine Rivers and Calcasieu, Grand and White Lakes. Therefore, it is clear that the present division of the state into two areas, one in which the smaller mesh is permitted and the other in which it is forbidden, has no rational basis. Instead, the law's effect is conditioned solely upon the specific designation of certain areas in Subsection D, and the statute R.S. 56:322 must therefore be considered a local law which violates Article 3, § 12 of the Louisiana Constitution.
For the reasons assigned, the ruling of the district court denying the motion to quash is reversed, and the case is remanded to the district court for further proceedings consistent with the views expressed herein.
NOTES
[1] The defendants also argued that R.S. 56:322 denied them the equal protection of the laws. We need not reach the issue due to our disposition of the case on other grounds.
[2] Article 3, § 12 provides in pertinent part:

"(A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
. . . . .
(10) Defining any crime."
[3] A Louisiana court may take judicial cognizance of the state's topography and geography. State v. Clement, 188 La. 923, 178 So. 493 (1938).